IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 CV 5637 |
| | ) | |
| v. | ) | District Judge Ronald A. Guzman |
| | ) | |
| SUPERVALU, INC. and , | ) | Magistrate Judge Michael T. Mason |
| JEWEL-OSCO, an operating unit of | ) | |
| SUPERVALU, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge.

Currently pending before this Court are three motions to compel, each of which

has been fully briefed. For the reasons set forth below, defendants' motion to compel

properly verified responses to their first set of interrogatories [103] is granted in part and

denied in part; plaintiff's motion to compel a portion of defendants' human resources

database [113] is denied; and plaintiff's motion to compel regarding its Rule 34 request

for entry upon land and inspection [126] is granted in part and denied in part.

**I.     BACKGROUND**

Plaintiff EEOC ("plaintiff" or "EEOC") has sued defendants Supervalu, Inc. and

Jewel-Osco ("defendants") for violations of the Americans with Disabilities Act ("ADA").

According to the EEOC's complaint, the EEOC alleges that defendants have violated

the ADA by (1) prohibiting disabled employees who were on defendants' one-year paid

disability leave, or eligible for it, from returning to work unless they could return without

any accommodation to full service and had no physical or mental restrictions, and terminating such employees at the end of the one-year leave period; and (2) prohibiting disabled employees who were not injured on the job from participating in defendant's 90-day light duty program. (Compl. at 1[1].) The EEOC contends defendants have been so violating the ADA since November 1, 2003. (*Id.* at 1 & ¶¶ 8, 9, 13, & 14.) The EEOC filed its complaint against defendants on September 11, 2009.

Discovery in this matter has proceeded contentiously. The parties have expended considerable resources filing and/or briefing nine discovery-related motions to date. This Court has previously resolved four of those motions. (See Mots. [31, 54, 56, 68] resolved by Court Rulings [36, 45, 46, 65; 81; 66; 81].) Additionally, this Court's orders directing the parties to engage in proper Rule 37.2 conferences resulted in the parties resolving, without further Court involvement, two additional motions [95, 83] and a portion of a third [103]. (See Mots. [95, 83, 103], resolved in whole or in part after additional Court-ordered Rule 37.2 conferences [102; 91; 109].) As noted above, three discovery motions remain pending before this Court: (1) defendants' motion to compel properly verified responses to their first set of interrogatories [103]; (2) plaintiff's motion to compel a portion of defendants' human resources database; and (3) plaintiff's motion to compel regarding its Rule 34 request for entry upon land and inspection [126].

All discovery in this matter, fact and expert, is scheduled to close December 13, 2010 [81]. On November 23, 2010, the parties filed a joint motion for extension of time to complete discovery [121]. In that motion, the parties stated that on November 23, 2010, they agreed to a majority of the material terms to resolve this matter, including monetary relief, and were working to prepare an agreement memorializing those terms.

2

The parties requested a 30-day extension of discovery to permit them sufficient time to prepare and finalize their agreement, and to avoid expending additional resources on litigating this matter. They also requested that rulings on the two then-pending motions to compel (regarding interrogatory verifications [103] and defendants' human resources database [113]) be deferred until after the next status hearing before the District Court, scheduled for January 5, 2011.

On November 30, 2010, the District Court denied the parties' joint motion for extension of time to complete discovery [125]. Later that same day, at a status before this Court, the parties reported that their settlement discussions were ongoing. This Court set a status hearing for December 3, 2010, and stated that we would not rule upon the then-pending motions to compel (regarding interrogatory verifications [103] and defendants' human resources database [113]) in the interim.

On December 1, 2010, EEOC filed the third currently-pending motion to compel, regarding its Rule 34 request for entry upon land and inspection [126]. At the December 3, 2010 status hearing, the parties reported their settlement discussions were ongoing. As a result, this Court ordered defendants to file their response to plaintiff's motion to compel a portion of defendants' human resources database [113], as well as plaintiff's motion to compel regarding its Rule 34 request for entry upon land and inspection [126], by noon on December 6, 2010 [129]. (This Court had previously ordered defendants to respond to the former motion by November 24, 2010 [116], but defendants did not do so, presumably because of their then-pending joint motion for extension of time.) We also set a status for December 8, 2010, and directed plaintiff's counsel to notify our Chambers on December 6, 2010 in the event the parties reached

an agreement to resolve this matter.

Having not heard from plaintiff's counsel that the parties have finally resolved this matter, this Court resolves the pending motions as follows.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure contemplate liberal discovery, and "relevancy" under Rule 26 is extremely broad.  That Rule provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ....  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  However, while the scope of permissible discovery remains broad, it is not unlimited.  A party seeking discovery must demonstrate that the information sought is "relevant *to any party's claim or defense*."  *Id.* (emphasis supplied).

Rule 26(b)(2)(C)(iii) allows a court to limit discovery that otherwise would be permissible under Rule 26(b)(1) on a showing that the burden or expense associated with producing the information outweighs the likely benefit to the requesting party in obtaining the discovery.  "If a party is to resist discovery as unduly burdensome, it must adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome."  *Perry v. City of Gary, Ind.*, No. 08-280, 2009 WL 2253157, at *4 (N.D. Ind. July 27, 2009) (quotations and citation omitted); *see also Schaap v. Executive Indus. Inc.*, 130 F.R.D. 384, 387 (N.D. Ill.1990) ("The mere fact that [a party] will be required to expend a considerable amount of time, effort, or expense in answering the interrogatories is not a sufficient reason to preclude

4

discovery.").  When determining whether to limit the extent of discovery based on a party's argument that the burden or expense of the proposed discovery outweighs its likely benefit, a court must consider "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C).

## III.  ANALYSIS

### A.  Defendants' Motion to Compel Properly Verified Responses to their First Set of Interrogatories [103]

Defendants' motion originally addressed four distinct issues.  After noting that the parties' meet and confer efforts did not comply with Rule 37.2 because they were largely conducted in writing, this Court ordered the parties to again meet and confer regarding the motion [105].  On November 12, 2010, plaintiff submitted a statement indicating that the parties had resolved three of those four issues [109].  It appears that resolution was largely in defendants' favor, as the EEOC agreed to produce the documents defendants sought (including questionnaires and cover letters sent to potential claimants, as well as completed questionnaires by individuals who indicated they did not want to participate in this lawsuit), and to request various documents related to claimants' income (or lack thereof) from the IRS and Social Security Administration [109].

The remaining unresolved issue relates to the EEOC's verification of its answers to defendants' first set of interrogatories.  According to defendants' motion, defendants' first set of interrogatories address issues "central" to this case, such as claimants' alleged impairments and/or disabilities, claimants' efforts to mitigate their alleged

damages, claimants' alleged restrictions or limitations, and whether claimants sought accommodation (Defs.' Mot. at Ex. A, Interrogs. Nos. 3, 5, & 6 [103-2].).

As of November 16, 2010, the EEOC reported that it had identified 113 claimants for whom it seeks relief in this case [112].[1]   An earlier order of this Court required the EEOC to complete its responses to defendants' discovery requests on a rolling basis as plaintiff identified claimants, no later than October 29, 2010 [81].  Defendants contend that the EEOC initially failed to provide verifications for any of its answers to defendants' first set of interrogatories.  (Defs.' Mot. at 2-3.)  On October 29, 2010, the EEOC provided a single verification signed by Laurie Elkin, counsel of record for the EEOC. That verification stated that "certain of the matters stated [in plaintiff's general and claimant specific responses to defendant's interrogatories] are not within my personal knowledge; however, to the best of my knowledge, information and belief, the answers are true."  (Defs.' Mot. at Ex. D.)

Defendants state that, at the time the EEOC submitted Ms. Elkin's verification, the EEOC knew through certain of the claimants' <u>prior</u> sworn deposition testimony that many of the EEOC's answers to defendants' first set of interrogatories were false. Defendants' motion and supplemental brief provide numerous examples of various claimants' deposition testimony – at least seven of which were taken before the EEOC submitted Ms. Elkin's verification to defendants – that allegedly conflict with the interrogatory responses plaintiff provided for those claimants.  (Defs.' Mot. at 3-4, Ex. E;

---

[1]  Defendants' response to plaintiff's motion to compel a portion of defendants' human resources database indicates that there are currently 108 claimants for whom the EEOC seeks relief in this case.  (Defs.' Resp. at 3 [132].)  That number has not yet been confirmed by the EEOC.

Defs.' Suppl. Br. at Ex. L [117-2].)

Defendants request that this Court order the EEOC to provide a proper verification signed by each applicable claimant, rather than a single verification signed by the EEOC. Defendants contend that if the EEOC is unable to provide such verifications – "either because a claimant refuses to cooperate or because a claimant refuses to verify a false or erroneous interrogatory answer" – the EEOC should be barred from recovering on that claimant's behalf. (Defs.' Mot. at 5; Defs.' Suppl. Br. at 4 [117].) Defendants fail to cite any case law that directly supports the relief they request, notwithstanding this Court's request that their supplemental brief set forth any supporting case law [111].

In response, the EEOC argues that Ms. Elkin's verification on behalf of the EEOC is entirely appropriate under Rule 33(b)(1)(B), as the EEOC is the only plaintiff party to this case and was the recipient of the interrogatories served. (Pl.'s Resp. at 2 [108].) Plaintiff states that despite the volume of materials it had to review and the tight (two-week) response schedule, "someone from the EEOC spoke to each individual claimant to gather information in response to these interrogatories," that the EEOC "culled information from literally hundreds of thousands of pages of documents and in every possible instance read and confirmed the draft interrogatory answers by the phone with each claimant prior to their issuance," and that the "answers were confirmed with each claimant prior to their appearance for their depositions." (Pl.'s Resp. at 2-3.)

The EEOC also contends it presented the individual claimants for deposition, thus providing defendants with a full opportunity to explore and follow-up regarding interrogatory answers, and avoiding any prejudice or undue surprise. (Pl.'s Resp. at 3,

7

4.)  The EEOC argues that "none of the supposed inconsistencies [between the interrogatory answers and claimants' deposition testimony] involve highly relevant issues and the modification often relates to documents already in the defendants' possession (and often not in the claimant's possession)."  (*Id.* at 4; *see also* Pl.'s Suppl. Resp. at 2-3 [119].)  It further maintains, with citation to one not-directly-analogous case, that "the best way to seek the requested information ... [is] through other forms of discovery such as depositions."  (*Id.* at 3.)  Plaintiff also contends that defendants have suffered no prejudice as a result of "these generally minor discrepancies."  (Pl.'s Suppl. Resp. at 4.)  Plaintiff argues that its duty to supplement or correct prior answers under Rule 26(e)(1)(A) only applies "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," and thus even if the alleged inconsistencies are "material," the claimants' deposition testimony is all the additional or corrective information required under that Rule.  (Pl.'s Resp. at 3.)  Finally, plaintiff contends the motion should be denied based on the fact that, contrary to this Court's order [111], defendants failed to participate in an additional Local Rule 37.2 conference with plaintiff regarding their motion.  (Pl.'s Suppl. Resp. at 5.)[2]

Federal Rule of Civil Procedure 33(a) provides in relevant part that "a party may serve on any other party no more than 25 written interrogatories, including all discrete

---

[2]  The EEOC also complains that defendants have made errors in their own interrogatory responses, and failed to provide any verification for their initial answers to the EEOC's first and second sets of interrogatories.  (Pl.'s Suppl. Resp. at fn1.)  Any issue one party might have with an opposing party's discovery conduct should be presented, after a proper Local Rule 37.2 conference, via a timely motion to compel, not in a footnote in the final brief on a motion brought by the opposing party.

subparts." Rule 33(b)(3) requires that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Notably, the EEOC does not dispute that various interrogatory answers are inaccurate. Instead, the parties hotly contest whether those inaccuracies are material. This Court's review of the deposition transcripts attached to the parties' submissions reveals that some of those discrepancies between portions of a claimant's interrogatory answer and his or her deposition testimony may be material. For example, claimant Kolberg stated in her interrogatory response that she "has been able and available to work since May 2006" [117-2 at 2], however, at her deposition, she testified that she was unable to return to work from July 2006 through at least August 2007 [117-3 at 13]. As another example, claimant Steinhable stated in her interrogatory response that she "believes that she could have waited on customers in the deli and also could have been a regular deli worker while she recovered from her injuries" [117-2 at 4]. However, at her deposition, she responded "no" when asked if she could have performed the duties of a deli clerk in the "two to three months after [her] initial injury" [103-2 at 32]. Other discrepancies described by defendants appear to be minor, either standing alone, or when taken in the context of the remainder of a claimant's interrogatory response or other documents produced in this case. For example, claimant Kornau-Bandurski's interrogatory answer stated that "Jewel set up a doctor's appointment to evaluate [her] back," while she testified at her deposition that "Osco" set up that appointment. [*Compare* 117-2 at 7 *with* 117-3 at 3.]

This Court – and, evidently, defendants – has been unable to find any prior decision where a court required a plaintiff governmental agency to have each claimant

represented by that agency personally verify interrogatory answers, whether or not those answers had been shown to be inaccurate. Regardless of that lack of precedent, this Court is troubled by the fact that the EEOC did not review the claimant deposition testimony taken prior to October 29, 2010 for any inconsistencies with those claimants' interrogatory answers before providing Ms. Elkin's verification. The EEOC has not provided any explanation – either at oral argument or in its supplemental brief – for that failure. Granted, there are a large number of claimants in this case, and given the scope of the parties' (particularly the EEOC's) discovery requests, the parties have had to conduct a significant amount of discovery in a relatively condensed period of time. However, Rule 33's verification requirement would be rendered meaningless if a party could rely solely upon information gathered through other discovery methods to compensate for inaccurate interrogatory responses. *See U.S. v. Miscellaneous Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004) (stating that the court "will not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous"). Such an interpretation would provide no incentive for a party to ensure its interrogatory responses are accurate in the first place. Moreover, it is impossible to determine whether all corrective information would – or could – ever be revealed in a claimant's deposition testimony. The ongoing duty on each party to supplement and correct discovery responses under Rule 26(e)(1) implicitly requires each party to police its own discovery responses, something that the EEOC failed – at least in part – to do here.

While those considerations warrant granting some relief to defendants, the remedy defendants seek in their motion – requiring the EEOC to have each claimant

personally sign a verification for his or her interrogatory responses, on pain of barring a claimant's recovery where the EEOC fails to do so – is as unjustified as it is infeasible. Defendants' assertions of prejudice – the hindrance in their ability to prepare for claimants' depositions and prepare their defense in general (Defs.' Mot. at 3) – are somewhat amorphous. Given that claimants' depositions have provided at least some corrective information, their proposed sanction is disproportionately severe. Further, discovery closes in one week. It may be logistically impossible for plaintiffs to meet in person with each claimant in that time period to procure an individually-signed verification from each. However, defendants should not be deprived of the benefit of accurate Rule 33 interrogatory responses altogether. Courts routinely require parties to submit corrected interrogatory responses and proper verifications when those responses are shown to be inaccurate. *E.g.*, *Mafcote, Inc. v. Federal Ins. Co.*, No. 3:08-CV-11-S, 2010 WL 1929900, at *3 (W.D. Ky. May 12, 2010) (ordering plaintiff to submit complete and certified interrogatory responses where responses were inaccurate and verification was false).

As a result, this Court grants defendants' motion to compel in part as follows. The EEOC is ordered to meet and confer with each claimant regarding his or her responses to defendants' Interrogatories Numbers 3, 5, and 6. In the event any portion of a claimant's responses to those interrogatories is inaccurate, the EEOC shall disclose each inaccuracy to defendants and, where applicable, refer defendants to any additional or corrective information in the record related to the response. In the event additional or corrective information with respect to any claimant's interrogatory response has not otherwise been made known to defendants, the EEOC shall provide defendants with an

11

amended or corrected interrogatory response.  In providing such amended or corrected responses, if the EEOC is unable to secure a verification individually signed by the claimant, an attorney for the EEOC may provide a verification setting forth the steps taken by that attorney to comply with this Court's order, describing why a verification signed by the claimant individually could not be obtained, and stating that, to the best of that attorney's knowledge, information and belief, the amended or corrected response is true and accurate.  The EEOC shall provide the information above to defendants no later than December 13, 2010.  The remainder of the relief sought in defendants' motion is denied.  This Court declines to award defendants their costs or attorneys' fees incurred in filing this motion.  Among other things, defendants apparently failed to participate in the additional Rule 37.2 conference ordered by this Court [111], and provided no explanation for that failure in their supplemental brief.

**B.      The EEOC's Motion to Compel a Portion of Defendants' Human Resources Database [113]**

This motion arises out of the EEOC's document request for "[a] copy of Defendant's PeopleSoft and HRMS database(s) for employees from November 1, 2003 through the present, produced as a comma delimited text file."  (Pl.'s Mot. at 1, *quoting* Pl.'s Doc. Request No. 16 [113].)  The EEOC argues that this database contains "Event Dates" for personnel actions like hiring, firing, and transferring, tracks the store location and position for each such action, and thus could be used by the EEOC to identify when positions were open and filled at each of defendants' stores.  The EEOC argues such information is relevant because (1) defendants could have returned many claimants to work from their medical leave by placing them into existing open positions that could

accommodate their disabilities, and (2) defendants "will almost assuredly argue that there were no open positions for the claimants to be placed into."  (*Id.* at 2.)

After meeting and conferring with defense counsel, the EEOC narrowed its document request to include "the personnel actions relating to the hiring, termination, and transfer of employees at Jewel," which "would include the job position and store location for each personnel action."  (Pl.'s Mot. at 2.)  The EEOC contends that from that data, it could "piece together" when positions were open and filled at each of defendants' retail locations.  (*Id.* at 4.)  Plaintiff maintains that other information produced by defendants in discovery – including copies of job postings at individual stores – is insufficient for plaintiff to review the open positions, as several stores did not provide all job postings during the relevant time period.  (*Id.* at 3.)  The EEOC notes that, while defendants could attempt to rebut its analysis that a particular position was in fact open, "that does not change the fact that EEOC is entitled to this information in discovery."  (*Id.* at fn. 2.)  Plaintiff argues that based on defendants' own Rule 30(b)(6) testimony regarding defendants' human resources data collection, "this sort of analysis could be completed" and defendants' "types of databases are designed for this sort of production at minimal expense."  (*Id.* at 3, 4.)

The EEOC originally sought defendants' human resources database information in connection with, among other things, its efforts to ensure defendants produced a comprehensive list of employees terminated at the end of their 52-week medical leave. (*Id.* at 1.)  After this Court ordered defendants to produce that information [36], and defendants completely complied with that order [65], plaintiff continued to seek that database information, on the grounds that it would allow plaintiff to determine what

positions were open and filled at defendants' various retail locations. (Pl.'s Mot. at 2.)

In response, defendants contend, among other things, that their human resources database does not contain the job opening and job filled information plaintiff seeks, as defendants do not have the "Position Management" tool activated in their database. (Defs.' Resp. at 3 [132].) Defendants maintain their current and legacy databases "merely track personnel and benefits transactions for each employee by date," and that only defendants' job postings themselves can determine when a particular position was open or filled. (*Id.*) Defendants contend they have produced all job postings to the EEOC as defendants kept them in the ordinary course of business, and that "the EEOC only has itself to blame for the fact that some postings going back to November 2003 are no longer available," because the EEOC did not file suit sooner. (*Id.* at 5-6.) Defendants assert that plaintiff's "narrowed" database information request in fact includes all employees and every retail location from 2003 to the present," encompassing over 180 locations and over 100,000 employees, without regard to whether one of the 108 claimants worked at the location. (*Id.* at 3.) Defendants also state that collecting the "narrowed" information sought by plaintiff would not simply be a matter of copying the information onto a disk, but would require defendants' information technology personnel at least one week to write the code needed to pull the information from defendants' current database, and likely longer for defendants' two legacy databases. (*Id.* at 6.)

Here, the deposition testimony regarding defendants' human resources data collection submitted by plaintiff does not establish that defendants could produce the information sought at all as defendants' databases currently exist, much less "at minimal

expense."  At most, the testimony provided to this Court indicates the deponent's belief that data from defendants' current human resources can be sorted into an Excel spreadsheet, and that it would be possible to run a query for multiple employees and multiple associate histories and have the gathered data exported into an Excel spreadsheet [113-4 at 12-13, 18-19].  That testimony in no way establishes that defendants' current – or legacy – database could run a query for hire, termination, and transfer dates for each of over 100,000 employees at 180 locations, or export such data into an Excel spreadsheet.

Moreover, even if such data could be generated, plaintiff has not established that the purported relevance or benefit of the information outweighs the burden or expense in producing it.  *See* Fed. R. Civ. P. 26(b)(2)(C).  Defendants contend that, to pull the information sought by the EEOC's narrowed request, defendants' technology personnel would need at least one week to write the code necessary to pull such data from defendants' current database, and likely a longer period of time to write such code for defendants' legacy databases.  Further, as plaintiff appears to acknowledge by virtue of its "piecing together" argument, the information it seeks would not definitively prove the existence or number of open or filled positions at defendants' retail stores at any particular time.  Instead, that information would require significant analysis as well as the inference that each time one type of employee position ended – whether by termination, resignation, or otherwise – a corresponding position became open and ready for hire.  Put another way, to be relevant, plaintiff's information request assumes that defendants slated a specific number of employees to hold a particular position at any given store at any given time.  However, plaintiff has not provided any record

support for that assumption, and defendants' response provides a credible explanation to the contrary.

While plaintiff is certainly permitted to make inference-related arguments regarding evidence at trial, this Court is not required to order defendants to expend significant resources in responding to an indisputably burdensome request of limited likely benefit, particularly where, as noted above, discovery closes in one week. None of the authorities cited in plaintiff's motion involve analogous circumstances or warrant a contrary conclusion. And while it is certainly possible that one document request may be relevant to multiple issues in a case, the EEOC's shifting explanations for its database information request may be part of what defendants have previously characterized, with at least some accuracy, as plaintiff's "scorched earth" litigation tactics. Among other things, plaintiff filed a motion [56] (which this Court largely denied [66]), seeking leave to file 25 additional interrogatories on top of the 25 it had previously served, notwithstanding the fact that the EEOC had not yet determined to what use it would put fourteen of those additional interrogatories. Additionally, as reported at the November 16, 2010 status hearing, plaintiff served, approximately six weeks before the close of discovery, over 800 separate requests for admission upon defendants [112].

As reported at the most recent status hearing on December 3, the parties have approximately 70 depositions remaining, as well as other discovery obligations to complete, all targeted toward indisputably relevant information. Based on those considerations, plaintiff's motion to compel is denied. Plaintiff has the job posting information in defendants' possession. Defendants concede "the fact that some of the postings going back to November 2003 are no longer available." (Defs.' Resp. at 5.)

Thus, while the incompleteness of the job postings information produced to date is unfortunate, that incompleteness disadvantages defendants as well as plaintiff, as, at a minimum, it prohibits defendants from accurately arguing that it produced job postings information for the entirety of the relevant time period. Based on the foregoing considerations, plaintiff's motion to compel is denied.

**C.** **Plaintiff's Motion to Compel Regarding its Rule 34 Request for Entry Upon Land and Inspection [126]**

In this motion, the EEOC contends that, in connection with its burden of establishing that its claimants (who number over 100) could have been returned to work, it has retained as a consultant Professor Glenn Hedman of the University of Illinois at Chicago, an engineer specializing in fashioning or finding accommodations that allow disabled individuals to return to the work force. (Pl.'s Mot. at 1 [126].) The EEOC seeks to have Professor Hedman "observe defendants' employees performing their tasks, to measure and record the dimensions of certain of Defendants' facilities." (*Id.*) The EEOC states that, depending on his findings, Professor Hedman may be identified as a testifying expert. (*Id.*)

In the motion, the EEOC maintains it informed defendants on October 14 that it would be seeking an opportunity to conduct site visits. (Pl.'s Mot. at 2.) Plaintiff also contends that it attempted to come to an agreement with defendants regarding the logistics of the visits, as well as the particular sites to be visited, both before and after serving its formal Rule 34 request for entry upon land and inspection on November 5, 2010. (Pl.'s Mot. at 2-3 & Ex. 1.) Plaintiff's formal request set forth the following parameters:

1. Time for inspection: the inspections should take place at a time mutually agreeable to the parties, between the hours of 9:00 a.m. and 5:00 p.m. (except to the extent necessary to observe a job which is performed exclusively outside of those hours), preferably beginning on November 16, 2010, and concluding no later than December 8, 2010.

2. Place of inspection: each facility where an EEOC claimant was previously employed which is still owned or operated by the Defendants.

3. Portions of each facility to be inspected: all portions of the facility where the claimant worked, including but not limited to check stands, customer service desk or counter, store aisles, bakery department, deli and Chef's Kitchen, produce department, market department, receiving, stock rooms, freezer, cooler, and break rooms, and Defendants' distribution center.

4. Items to be inspected: measurements will be taken of space available for cashiers in check stands, space available to employees working at customer service desks or counters, the dimensions of the work spaces in the various departments. Various items that are offered for sale will be weighed. Various cases of items as received by the stores will be weighed.

5. Photography: EEOC wishes to take motion pictures of employees currently engaged in the work typical of the job titles held by the EEOC claimants.

(Pl.'s Mot. at Ex. 1.)

On November 19, the EEOC contends it provided defendants with the locations of a total of six stores it proposed to visit with Professor Hedman on November 23, 24, 28, and 29. (*Id.* at 5.) Plaintiff seeks a court order directing defendants to allow the EEOC and Professor Hedman to inspect "how multiple job functions are performed at a sampling of facilities chosen by the EEOC," with each inspection to occur upon three days' notice of the particular facility to be inspected. (Pl.'s Mot. at 6.) The EEOC states that during those inspections, it (and presumably Professor Hedman) will "refrain from interacting with (other than necessary to be directed [to] the relevant portions of the facilities) or filming or photographing any employee or customer," but that it should be

allowed to photograph structures and equipment, and that "no further impediments should be placed before" the inspection of defendants' facilities. (*Id.*)

For their part, defendants argue, among other things, that the EEOC's motion is premature because defendants' response to the EEOC's Rule 34 request is not yet due. (Defs.' Resp. at 5 [131].) Defendants also argue that the EEOC's request is impermissibly vague and lacks specificity sufficient to allow defendants to comply with it, as the request fails to detail the facilities and locations to be inspected, the portions or departments of each facility to be inspected, the people and/or objects to be inspected, the time and date for each inspection to occur, and the tasks that will be performed during the inspection. (*Id.* at 6.) Additionally, defendants contend the request is not reasonably calculated to lead to the discovery of admissible evidence, as the EEOC has made no effort to demonstrate that an inspection of stores today is indicative of the tasks claimants performed years ago. (*Id.* at 7.)

As an initial matter, we find that plaintiff's request to have Professor Hedman inspect defendants' stores is reasonably calculated to lead to the discovery of potentially relevant evidence, whether or not Professor Hedman is ultimately offered by plaintiff as an expert at trial. Professor Hedman's inspections may assist Professor Hedman and the EEOC in their assessment of whether or not certain modifications or assistive devices would be feasible. As plaintiff points out, a Rule 34 request to inspect "poses a very low hurdle." *EEOC v. Libbey-Owens-Ford, Co.,* 93 F.R.D. 370, 371 (N.D. Ill. 1981). Rule 34(a) requires only that such a request seek information "within the scope of Rule 26(b)," and Rule 26(b)(1) in turn allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...." As a result,

defendants' arguments that many of the claimants worked years ago, and that the circumstances of a claimant's employment may have changed since his or her employment ended, go to the weight of any evidence generated by the site visits, and thus are appropriately advanced not in opposition to a discovery request but at trial before the trier of fact.

Further, the parties' briefs and exhibits demonstrate that their efforts to agree on the parameters of site visits have, at best, been far less than whole-hearted.  Among other things, plaintiff did not disclose Professor Hedman's identity to defendants – despite defendants' repeated requests for that disclosure – until November 16, over a month after plaintiff first proposed the site visits.  (Defs.' Resp. at 5, Ex. A.)  Further, defendants initially maintained they were not obligated to give the EEOC any response to their Rule 34 request until December 5, evidently relying on the amount of time normally allotted for a response under that Rule.  (Defs.' Resp. at 4.)  Indeed, defendants currently contend that the parties' agreed stay on proceedings pending settlement discussions extended defendants' response date to December 13.  (*Id.*) Given that this Court previously set discovery in this matter to <u>close</u> on December 13 [81], the parties' behavior clearly flies in the face of the letter and the spirit of, among other things, the Standards for Professional Conduct within the Seventh Federal Judicial Circuit.  *See, e.g.,* Lawyers' Duties to Other Counsel No. 11 ("We will make good faith efforts to resolve by agreement our objections to matters contained in pleadings and discovery requests and objections."), No. 12 ("We will not time the filing or service of motions or pleadings in any way that unfairly limits another party's opportunity to respond."), No. 17 ("We will agree to reasonable requests for extensions of time and for

waiver of procedural formalities, provided our clients' legitimate rights will not be materially or adversely affected."), No. 27 ("We will base our discovery objections on a good faith belief in their merit and will not object solely for the purpose of withholding or delaying the disclosure of relevant information.")

As for defendants' arguments regarding the vagueness of plaintiff's Rule 34 request, plaintiff evidently attempted to remedy that lack of specificity through subsequent correspondence with defendants. (Pl.'s Mot. at 3-5.) Further, plaintiff's motion provides additional parameters for its Rule 34 request. (*Id.* at 6.) Normally, this Court might require that the party requesting an insufficiently specific Rule 34 inspection serve an amended, and sufficiently specific, request. However, given the looming discovery deadline and the parties' evident inability to rationally resolve this discovery dispute, this Court will hold the EEOC to the inspection limitations set forth in its motion to compel, and will grant that motion in part as follows.

By December 13, 2010, defendants shall permit Professor Hedman, as well as one attorney of record from the EEOC, to inspect up to six of defendants' retail locations. In the event the parties cannot agree on those locations, defendants may reject up to three of the locations proposed by plaintiff, so long as defendants propose at least six alternative retail locations that they currently operate for plaintiff to chose among. At least one claimant represented by the EEOC must have worked at each location to be inspected. A representative of defendants may accompany Professor Hedman and the EEOC's attorney during each inspection, but should avoid any behavior that might unreasonably inhibit Professor Hedman's inspection or his discussions with the EEOC's attorney regarding the same. During each inspection, the

EEOC attorney and Professor Hedman shall refrain from interacting with any of defendants' employees or customers, other than as necessary to be directed to the relevant portions of the facility. They shall also refrain from filming or photographing any employee or customer, but are allowed to photograph structures and equipment. If it reasonably appears that either the EEOC or Professor Hedman will be present in locations not generally accessible to the public or engaging in activities that may pose a risk to either (*see* Defs.' Mot at Ex. C [131-2]), the parties shall work in good faith to agree upon reasonable terms for a release. The remainder of the relief sought in plaintiff's motion is denied.

## IV.    CONCLUSION

This Court is disappointed that the parties have chosen to focus their time and other resources on protracted discovery disputes, rather than on settlement negotiations. We are also displeased by the fact that the parties did not make greater efforts to resolve the pending motions without this Court's involvement. Requiring this Court to rule on the pending motions has ultimately afforded the parties less time within which to complete the bulk of the discovery those motions sought. Discovery closes in seven days. This Court strongly urges the parties to use that time to gather evidence and/or work to settle this matter, rather than expend any additional resources on motion practice. In the event future motion practice requires this Court's involvement, should we determine that either party's position lacks merit or that either party failed to conduct good faith negotiations under Local Rule 37.2, sanctions may be imposed against it.

For the reasons set forth above, defendants' motion to compel properly verified

responses to their first set of interrogatories [103] is granted in part and denied in part;

plaintiff's motion to compel a portion of defendants' human resources database [113] is

denied; and plaintiff's motion to compel regarding its Rule 34 request for entry upon land

and inspection [126] is granted in part and denied in part.  It is so ordered.

ENTERED:

MICHAEL T. MASON
United States Magistrate Judge

Dated: December 7, 2010