

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> SUPERVALU INC., AMERICAN DRUG STORES LLC, JEWEL FOOD STORES, INC., <br><br> Defendants. | Case No. 1:09 CV 05637 <br><br> Judge Ronald A. Guzman |

## CONSENT DECREE

Plaintiff Equal Employment Opportunity Commission ("EEOC") filed this action in 2009 alleging Defendants SUPERVALU INC., Jewel Food Stores, Inc. and American Drug Stores LLC[1] have violated the Americans with Disabilities Act of 1990 ("ADA") since November 1, 2003 by:

   a) Prohibiting disabled employees who were on Defendants' one-year paid disability leave, or eligible for it, from returning to work unless they could return without any accommodation to full service and had no physical or mental restrictions, and terminating such employees at the end of the one-year leave period.

---

[1] Defendants filed an Answer stating that the Charging Parties named in the Complaint were never employed by an entity called "Jewel-Osco," but were instead employed by Jewel Food Stores, Inc. or its predecessors. Defendants also filed a Notification of Affiliates disclosing that Jewel Food Stores, Inc. is a wholly owned entity of Jewel Companies, Inc., which is a wholly owned entity of American Stores Company, LLC, which is a wholly-owned entity of New Albertson's, Inc., which is a wholly owned entity of SUPERVALU INC. Accordingly, EEOC amended its complaint on January 3, 2011, such that SUPERVALU INC., American Drug Stores LLC, and Jewel Food Stores, Inc. are the named Defendants in this suit. SUPERVALU INC., solely in its capacity as the ultimate parent company of Jewel Food Stores, Inc. and American Drug Stores LLC, and Jewel Food Stores, Inc. and American Drug Stores LLC are hereinafter referred to in this Decree as "Jewel-Osco" or the "Company".

    b) Prohibiting disabled employees who were not injured on the job from participating in Defendant's 90-day light duty program. [2]

The Complaint alleges that persons harmed by these practices include May Allen, Anthony Kwit, Thomas Riffle, Ann Stauffer, Elizabeth Vazquez, and a class of similarly situated employees. The Complaint also alleges that Anthony Kwit was harassed because of his disability. In response, the Company denies that they violated the ADA, discriminated against or harassed any employee, or failed to provide for reasonable accommodation of employees with disabilities. Nothing in this Decree shall be construed as an admission or denial of the claims or defenses in this case.

1. In the interest of resolving this matter, and as a result of having engaged in comprehensive settlement negotiations, the parties have agreed that this action should be finally resolved by entry of this Consent Decree (hereinafter "Decree"). This Decree fully and finally resolves any and all issues and claims arising out of the Complaint filed by EEOC in this action. No party admits the claims or defenses of the other.

2. This Decree shall apply to the following facilities in Illinois, Indiana, and Wisconsin: (a) each Jewel and Jewel-Osco store; and (b) the distribution center located at Melrose Park, Illinois, operated by or for the benefit of Jewel Food Stores, Inc. and/or American Drug Stores LLC. All employees at such locations shall be covered by this Decree.

3. As used below and where not otherwise specified, the term "disability leave" means a leave of absence due to the employee's own "disability" as defined by the ADA, as amended, including when employees take such a leave in conjunction with a short term disability leave or a workers' compensation leave.

---

[2] This Consent Decree does not address the Company's Temporary Alternative Work program, nor does it require any change to this program.

## FINDINGS

4.  Having carefully examined the terms and provisions of this Decree, and based on the pleadings, record, and stipulations of the parties, the Court finds the following:

    a.  This Court has jurisdiction of the subject matter of this action and of the parties.

    b.  The terms of this Decree are adequate, fair, reasonable, equitable, and just. The rights of EEOC, May Allen, Anthony Kwit, Thomas Riffle, Ann Stauffer, Elizabeth Vazquez, the Eligible Claimants (as defined herein), and the public interest are adequately protected by this Decree.

    c.  This Decree conforms with the Federal Rules of Civil Procedure and the ADA and is not in derogation of the rights or privileges of any person. The entry of this Decree will further the objectives of the ADA, and will be in the best interests of the parties, May Allen, Anthony Kwit, Thomas Riffle, Ann Stauffer, Elizabeth Vazquez, the Eligible Claimants (as defined herein), and the public.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

### INJUNCTION AGAINST DISABILITY DISCRIMINATION

5.  The Company is hereby enjoined from discriminating on the basis of disability by not providing reasonable accommodation(s) to persons desiring to return to work from a disability leave.

### INJUNCTION AGAINST RETALIATION

6.  The Company shall not engage in any form of retaliation against any person because such person has opposed any practice as unlawful under the ADA, filed a Charge of Discrimination under the ADA, testified or participated in any manner in any investigation, proceeding, or hearing under the ADA, or asserted any rights under this Decree.

MONETARY RELIEF

7. Within twenty-one (21) days of the Approval of this Decree ("Approval Date" or "Entry of the Decree") by the District Court, the Company shall request and cooperate fully with the Claims Administrator to establish a Qualified Settlement Fund under §468(b) of the Internal Revenue Code ("QSF"), which will be funded by the Company in the principal amount of three million, two hundred thousand dollars ($3,200,000) for the purpose of providing individual monetary awards to Eligible Claimants, listed in Exhibit A ("Eligible Claimants"), who participate. The Claims Administrator shall have authority to issue checks from the account to Eligible Claimants. EEOC shall have the sole authority to determine the class of individuals who are Eligible Claimants and the amount to be paid to each Eligible Claimant in accord with procedure outlined in the following paragraphs regarding the claims procedure.

CLAIMS PROCEDURE

8. The Claims Administrator shall: (a) transmit notifications of monetary awards; (b) issue checks to Eligible Claimants from the QSF; (c) issue related tax documents; and (d) perform such other administrative tasks as directed to facilitate the claims process. All reasonable expenses, fees, and costs of the Claims Administrator shall be paid by the Company.

   A. **Identification of Eligible Claimants**. Within seven (7) days of the Approval Date, EEOC shall transmit to the Claims Administrator and the Company's counsel a computer-readable list containing the full names, social security numbers, and last known addresses for all of the Eligible Claimants. The Company may provide additional or more updated contact information if it determines that there is any inaccuracy in the information provided. The Company, however, will not challenge

4

the eligibility of the Eligible Claimants.

B. **Deceased Claimants**. Monetary awards may be paid on behalf of deceased Eligible Claimants through representatives of their estate or next of kin if appropriate documentation (*e.g.*, letters testamentary or the equivalent) is provided. Any monetary awards paid to a deceased Eligible Claimant shall be made payable to the estate of the deceased Eligible Claimant.

C. **Determination of Monetary Awards**. Within one hundred twenty (120) days of the Approval Date, EEOC shall determine the amount of each monetary award for each Eligible Claimant. In making such determinations, EEOC may consider whatever evidence EEOC deems appropriate, including, but not limited to, evidence received by EEOC in its investigation of the charges of discrimination underlying this action and in connection with its litigation of this action.

D. **Factors Bearing on Allocation of Monetary Relief**. EEOC will determine the amount of each Eligible Claimant's monetary award in its sole discretion based on the following factors: the extent to which the Eligible Claimant suffered from a physical or mental impairment that caused him or her to be substantially limited in a major life activity at the time of his or her termination; the extent to which the Eligible Claimant could have worked in any position during and subsequent to his or her disability leave of absence with or without a reasonable accommodation; whether the Eligible Claimant was offered the opportunity to return to work in a position that was consistent with the Eligible Claimant's work restrictions during or subsequent to his or her disability leave of absence; whether the Eligible Claimant worked subsequent to his or her employment with the Company; whether the Eligible Claimant's

termination occurred within three-hundred (300) days prior to the date of the filing of the charge that resulted in this litigation; whether the Eligible Claimant was a Charging Party; time or effort devoted to the litigation by the Eligible Claimant; damages incurred by the Eligible Claimant.

**E. Allocation of Monetary Relief.** EEOC shall be the sole determiner of the amount of monetary relief to be received by any Eligible Claimant under this Decree. The Company will not participate in or object to EEOC's determinations.

**F. Motion for Approval of Allocation of the QSF.** Upon the determination of all monetary awards, EEOC shall file a motion with the District Court seeking approval of the allocation of the QSF which shall contain the name and proposed gross settlement amount for each Eligible Claimant. The Company shall not challenge the proposed settlement distribution list.

**G. Notification of Awards.** Within seven (7) days of the above Order, EEOC shall cause the Claims Administrator to notify each Eligible Claimant via U.S. First Class Mail of the amount of his/her monetary award.

**H. Release of Claims.** Along with the Notification of Award, the Claims Administrator shall mail to each Eligible Claimant a Release, a copy of which is attached hereto as Exhibit B. Each Eligible Claimant will be notified by letter that in order to receive monetary payments under this Decree, he/she must execute and deliver to the Claims Administrator the Release. The letter will inform each Eligible Claimant that such Release must be signed and mailed to the Claims Administrator so that it is actually received by the Claims Administrator within forty-five (45) days of the mailing of the Notification of Award. Any Eligible Claimant whose executed Release is not

actually received by the Claims Administrator within forty-five (45) days of its mailing shall be ineligible for and forever barred from receiving any relief under this Decree. The Claims Administrator shall provide all original signed Releases to the Company.

I.  **Distribution of the QSF**. Within fourteen (14) days of the receipt of a Release signed by an Eligible Claimant, the Claims Administrator will mail a check to the Eligible Claimant in the amount indicated in the Notice of Award.

J.  **Tax Treatment of Monetary Awards**. The monetary awards shall be allocated 100 percent to compensatory damages. An IRS Form 1099 shall be issued to each Eligible Claimant with regard to the monetary award. Each Claimant shall bear full responsibility for any tax implications resulting from receipt of the monetary award.

K.  **Undistributed Funds**. In the event that checks are returned (or a Release is not timely submitted) and the QSF is not completely distributed for any reason within one hundred and twenty (120) days after the Order Approving the Allocation of the QSF, the remaining sum shall be handled in accordance with all relevant laws, including those regarding wages, as determined by the Claims Administrator. Any remaining sums will become part of a *cy pres* fund to be distributed to Thresholds.

<u>POSTING OF NOTICE</u>

9.  Within thirty (30) days after the Approval Date, the Company shall post at all stores and facilities to which this Decree applies, as specified in Paragraph 2, letter-sized (approximately 8 ½ x 11) same-sized copies of the Notice attached as Exhibit C to this Decree on bulletin boards or posting areas usually used for communicating with employees. The Notice shall remain posted for the duration of this Decree.

10. The Company shall take all reasonable steps to ensure that the posting is not altered, defaced, or covered by any other material. The Company shall certify to EEOC in writing within forty (40) days after the Approval Date that the Notice has been properly posted. A representative of EEOC will be permitted to enter their stores and facilities to which this Decree applies for purposes of verifying compliance with this Paragraph at any time during business hours so long as upon arrival he/she contacts a managerial employee, such as a Store Director or Assistant Store Director (or successor positions) so he/she will promptly be escorted into the relevant, non-public areas where the posting is located, by such managerial employee.

RECORDKEEPING

11. For the duration of this Decree, the Company shall maintain a record of their attempts to accommodate all employees who have been on a disability leave who have notified the Company they are released to return to work with restrictions or who have been out on a disability leave for more than 26 weeks. Such records shall include each employee's name, address, and phone number; each employee's job title and work location; a description of each employee's limitations (including copies of any Reports of Attending Physician or doctor's releases provided to the Company from its agents, third party benefits or leave administrators, or the employee during the employee's disability leave); the date each employee's leave began and ended; the employee's termination date (if any); a description of any accommodations discussed with each employee and considered by the Company; information regarding whether each employee returned to work at the Company; and identification of the personnel who handled the accommodation or termination process for the employee.

12. Upon the EEOC's request, the Company shall make all documents or records referred to in Paragraph 11, above, as well as a list of all positions which have been posted or filled during the employee's period of leave at the Company's location where an employee who has not been returned to work was last employed prior to going on disability leave, available for inspection and copying within ten (10) business days after EEOC so requests, or a reasonable time period if the volume of the request would make compliance within ten (10) business days a substantial hardship.

<u>REPORTING</u>

13. The Company shall furnish to EEOC written reports semi-annually for the duration of this Decree. The first report shall be due six (6) months following the Approval Date, and the reporting shall continue every six (6) months thereafter, though if the duration of this Decree is three (3) years, the final report shall be submitted sixty (60) days prior to the date set for termination of the Decree at the time that it is finally entered. In addition to having the records maintained and available for inspection pursuant to Paragraph 12, above, each such report shall contain the following information for each employee on disability leave who has been released to work with restrictions or who has been on a disability leave of absence which exceeds 26 weeks: the name, job title, a brief description of the status of the employee's disability leave, a brief description of attempts to accommodate the employee (where applicable, i.e., when the employee is released to return to work with restrictions) including a description of the employee's medical restrictions, and the last known contact information in the Company's records for each employee. The first report shall pertain to all reportable events, as described above, occurring during the first five (5) months of the period of the Decree. Each subsequent report shall pertain to reportable events occurring during the

subsequent six month period; as such, each report will be due thirty (30) days after the time period on which it reports. If the duration of this Decree is three years, the final report shall detail events occurring during the time period of the twenty-ninth through thirty-forth (29-34) month of the decree; thus, the final report shall pertain to a five (5) month period and be due sixty (60) days prior to the expected termination of the Decree. Each report need only contain reporting on events which occurred during the reporting period. However, if an issue arises in one reporting period and is resolved in a subsequent reporting period, that issue will be noted in both reports. If EEOC so requests, the parties shall meet within twenty-one (21) days of the submission of any report to discuss its contents. EEOC shall provide the Company with ten (10) days notice of its request for a meeting. The Company shall also provide a certification that the Notice required by Paragraph 9, above, has been properly posted for the six (6) month period preceding the report.

<u>TRAINING</u>

14. During each year of the duration of this Decree, all employees of the Medical Accommodations Administration Team shall be trained regarding (i) the duty to accommodate employees under the Americans with Disabilities Act; (ii) the Company's procedures for providing accommodations to employees on a disability leave of absence; and (iii) the range of accommodations available in the Company's stores and other facilities covered by the terms of this Decree. The first training shall take place within ninety (90) days of entry of this Decree. The trainer shall be an attorney from the law firm Morgan, Lewis & Bockius who is experienced in issues related to the Americans with Disabilities Act and the required training topics.

15. The Company shall certify to the EEOC in writing within five (5) business days after each

training has occurred that the training has taken place and that the required personnel have attended. Such certification shall include: (i) the date, location and duration of the training and (ii) a copy of an attendance list, which shall include the name and position of each person in attendance. The Company shall provide EEOC with copies of all training materials distributed to the participants upon request.

## JOB DESCRIPTION CONSULTANT

16. Within thirty (30) days from the entry of this Decree, the Company will engage a consultant to assist it in reviewing and revising the Company's job descriptions in order to ensure that the job descriptions do not contain unnecessarily strenuous physical demands (the "Job Description Consultant"). The Job Description Consultant has been chosen by the Company and shall be Scott Ege of Ege Worksmart Solutions, PC of Rockton, Illinois ("Ege"). Prior to the commencement of work by the Job Description Consultant, the EEOC and the Company shall separately meet with the Job Description Consultant within 14 days of the engagement to discuss the scope of his work as set forth in this Consent Decree.

17. The Job Description Consultant shall perform a physical job demand analysis of the non-managerial retail store jobs. The Job Description Consultant will provide the Company with a detailed assessment of the physical requirements of each job, including, but not limited to, lifting, bending, pushing, pulling, standing, and squatting requirements and the frequency with which the duties of the job require the performance of each physical requirement. Within one hundred fifty (150) days from the Entry of this Decree, the Job Description Consultant will complete his/her review of the Company's job descriptions and issue a report to the Company and the EEOC (hereinafter referred to as the "Job Description Consultant's Report"). This report will contain the physical job demand analyses for each job to ensure

that they are current and accurately reflect the actual physical demand requirements for each position, and do not include artificially strenuous physical requirements.

18. The Company shall make available to the Job Description Consultant any reasonably requested, relevant documents or information regarding the positions. The Company shall allow the Job Description Consultant reasonable access to stores requested by the Job Description Consultant and shall allow reasonable interviews of any employees requested by the Job Description Consultant. The Company shall respond within ten (10) business days of all such requests. If the Company asserts that any request of the Job Description Consultant is unreasonable or cannot be complied with, it shall, within fourteen (14) days of the request, meet and confer with the Job Description Consultant, either by phone or in person, in an attempt to resolve the dispute. If after so meeting and conferring, the Company continues to assert that any further or renewed request of the Job Description Consultant is unreasonable or cannot be complied with, it shall explain in writing to the EEOC, within ten (10) days of the meet and confer, the basis for its decision not to comply with the request (this shall be referred to as the "meet, confer and report process"). If the EEOC does not agree with the Company's decision not comply with the request, the EEOC and the Company shall meet and confer in an attempt to work out any disagreements. The Job Description Consultant may be included, at any party's request, in the meet and confer discussions. If no agreement is reached, the parties may seek relief from the Court pursuant to the dispute resolution procedure set forth in Paragraph 39.

19. Within fourteen (14) days of receiving the Job Description Consultant's Report, the EEOC may raise, in writing to the Job Description Consultant and the Company, any objection that it has to the Job Description Report. If the EEOC does raise such an objection, it may

request that the Job Description Consultant provide it with copies of the documents, notes, and data upon which the report was based, and request that the Job Description Consultant shall provide these within seven (7) days of the EEOC's request. Within seven (7) days of receiving the requested information or fourteen (14) days of the objection, whichever is later, the parties and the Job Description Consultant shall meet and confer either by phone or in person, in an attempt to resolve the dispute. If no agreement is reached regarding the objections, the parties may seek relief from the Court pursuant to the dispute resolution procedure set forth in Paragraph 39.

20. Within sixty (60) days of receiving the Job Description Consultant's Report and the resolution of any objections by the EEOC related to the matters in paragraph 19, the Company shall implement the Job Description Consultant's recommendations for the appropriate physical demand requirements for its retail store facilities unless they are inaccurate, unreasonable, or the Company otherwise determines that it will not implement all or part of the recommendations for the physical demand requirements, for good cause, provided, however, that the Company must provide an alternative that accurately depicts the physical demand requirements.

21. If the Company elects not to implement any of the Job Description Consultant's recommendations on changing of physical demand requirements of the job descriptions, it shall engage in the "meet, confer and report process" as described in paragraph 18 above. Prior to the "meet, confer and report process" it may request that the Job Description Consultant provide it with copies of the documents, notes, and data upon which the report was based. If the EEOC does not agree with the Company's decision not to implement a recommendation contained in the Job Description Consultant's Report or does not agree with

the Company's alternative recommendation, the EEOC and the Company shall meet and confer in an attempt to work out any disagreements. The Job Description Consultant may be included, at any party's request, in the meet and confer discussions. If no agreement is reached, the parties may seek relief from the Court pursuant to the dispute resolution procedure set forth in Paragraph 39.

22. Any information obtained and/or in the possession of the Job Description Consultant due to the consulting work described above shall be used solely for the purposes of this Consent Decree.

## ACCOMMODATIONS CONSULTANT

23. Within thirty (30) days from the entry of this Decree, the Company will engage an accommodations consultant to assist it in identifying possible accommodations to common physical limitations experienced by the Company's employees employed in non-managerial retail store positions (the "Accommodations Consultant"). Within five (5) days from the Entry of the Decree (or prior to that if the EEOC chooses), the EEOC shall provide the Company with any additional names it wishes to add to the Consultant List, attached as Exhibit D. The EEOC also agrees to at a minimum consider names from the Company which it may choose to add to the list in Exhibit D. The Company shall choose the Accommodations Consultant from the list provided by the EEOC. Prior to the commencement of work by the Accommodations Consultant, the EEOC, and the Company shall separately meet with the Accommodations Consultant to discuss the scope of his/her work as set forth in this Consent Decree.

24. The Company shall make available to the Accommodations Consultant any reasonably requested, relevant documents or information regarding the positions, including the Job

Description Consultant's Report. The Company shall allow the Accommodations Consultant reasonable access to stores requested by the Accommodations Consultant and shall allow reasonable interviews of any employees requested by the Accommodations Consultant. The Company shall respond within ten (10) business days of all such requests. If the Company asserts that any request of the Accommodations Consultant is unreasonable or cannot be complied with, it shall engage in the "meet, confer and report process" as set forth in paragraph 18 above.

25. Within one hundred eighty (180) days from the Entry of this Decree or sixty (60) days from the Job Description Consultant's Report, whichever is later, the Accommodations Consultant will complete its review of the Company's job descriptions, the Job Description Consultant's Report, the Company's facilities, its past history of accommodating employees, i.e., the accommodation chart dating back to 2008, which includes its past history of finding that it was unable to accommodate employees, and issue a report to the Company and the EEOC which will be a list of recommendations as to how common physical limitations may be accommodated in the relevant environment for each specific job; this list of potential accommodations shall be considered along with other potential reasonable accommodations for the purposes of making individualized accommodations decisions (the "Accommodations Consultant's Report" or "List").

26. In performing his/her work, the Accommodations Consultant may communicate with, and make reasonable requests for information from the Job Descriptions Consultant in order to expedite his/her work.

27. Within fourteen (14) days of receiving the Accommodations Consultant's Report, the Company may raise, in writing to the Accommodations Consultant any objection that it has

to the Accommodations Report. If the Company does raise such an objection, it may request that the Accommodations Consultant provide it with copies of the documents, notes, and data upon which the report was based, and the Accommodations Consultant shall provide these within seven (7) days of the request. Within fourteen (14) days of the objection, the parties and the Accommodations Consultant shall meet and confer either by phone or in person, in an attempt to resolve the dispute. If no agreement is reached regarding the objections, the parties may seek relief from the Court pursuant to the dispute resolution procedure set forth in Paragraph 39.

28. Within sixty (60) days of receiving the Accommodations Consultant's Report, the Company shall begin using the List along with other potential reasonable accommodations, if any, for consideration in the individualized accommodation process for its Jewel Food Stores, Inc. and American Drug Stores LLC employees, unless a recommendation on the List is unreasonable, would impose a substantial or undue hardship, violates the terms of the ADA, as amended, or another law, or the Company otherwise determines that it is unable to use all or part of the List.

29. If the Company elects not to use all or part of the List, it shall engage in the "meet, confer and report process" as set forth in paragraph 18 above. Prior to the "meet, confer and report process" the Company may request that the Accommodations Consultant provide it with copies of the documents, notes, and data upon which the report was based, and the Accommodations Consultant shall provide these within seven (7) days of the Company's request. If the Accommodations Consultant and the Company cannot reach a resolution, and the EEOC does not agree with the Company's decision not to implement use of the List and does not agree with the Company's alternative recommendation, if any, the EEOC and the

Company shall meet and confer in an attempt to work out any disagreements to finalize a list that will be used by the Medical Accommodations Administration Team in considering future reasonable accommodations. The Accommodations Consultant may be included, at any party's request, in the meet and confer discussions. If no agreement is reached, the parties may seek relief from the Court pursuant to the dispute resolution procedure set forth in Paragraph 39.

30. The above-referenced report or other information in possession of the Accommodations Consultant, and any testimony sought from the Accommodations Consultant, shall be used solely for the purposes of this Consent Decree.

## REVISION OF POLICIES AND COMMUNICATIONS WITH EMPLOYEES ON DISABILITY LEAVE REGARDING DISABILITY DISCRIMINATION AND ACCOMMODATIONS

31. Within forty (40) calendar days of the Approval Date, the Company will revise their Americans with Disabilities Act Policy prohibiting discrimination on the basis of disability and providing reasonable accommodations to include, at a minimum, the following:

   A. Instructions to employees as to how to request a reasonable accommodation and examples of the types of reasonable accommodations that are available to employees, including modified duty, part-time work, reassignment to a vacant position, acquisition or modification of equipment or assistive devices, and additional leave.

   B. An explicit statement that the Company will provide reasonable accommodations to qualified individuals with disabilities which may include work restrictions, so that they can perform the essential functions of the job.

   C. The Company must post a copy of such revised policy on the Company's intranet, and with the Notice attached as Exhibit C until such time as it distributes a copy of

such revised policy to Jewel Food Stores, Inc. and American Drug Stores LLC employees. The Company will enclose a copy of the Notice with each 26 week letter it sends to employees on disability leave until such time as it distributes a copy of such revised policy to employees.

32. For the duration of the Decree, the Company shall maintain a Medical Accommodations Administration Team which will be responsible for ensuring that the implementation of the Company's disability leave complies with the ADA as detailed in this Decree. All requests for accommodation from employees who have been on a disability leave of absence during the duration of this Decree shall be referred to the Medical Accommodations Administration Team. No employee on such a leave of absence will be terminated without the approval of a member of the Company's Medical Accommodations Administration Team.

33. All store directors and personnel coordinators who work at stores or facilities covered by the terms of this Decree shall be instructed to forward any Reports of Attending Physician or doctor's notes received from an employee on disability leave to the Medical Accommodations Administration Team.

34. Within forty (40) calendar days of the Approval Date, the Company will revise the documents that are provided to employees on a disability leave of absence to include, at a minimum, the following:

A. A revised twenty-six (26) week letter to be sent via U.S. mail to the last known address on file of any employee who is on a disability leave of absence after such employee has completed twenty-six weeks of leave. Each such letter must inform the employee of the ability to request a reasonable accommodation to enable the employee to return to work and specifically indicate that any of the following may

constitute a reasonable accommodation depending on the circumstances: modified duty, part-time work, reassignment to a vacant position, acquisition or modification of equipment or assistive devices, and additional leave if a reasonable return to work date is provided ("Accommodations Information"). The letter must instruct the employee to direct all such requests to the Company's Medical Accommodations Administration Team and include a phone number for the Medical Accommodations Administration Team. The letter must explain to the employee that the failure to respond to the letter may result in termination upon the expiration of the leave period. The letter must advise employees that they are not required to be free of all restrictions in order to return to work.

B. A revised forty (40) week letter to be sent via U.S. mail to any employee who is on a disability leave of absence after such employee has completed forty (40) weeks of leave. Each such letter must inform the employee of Accommodations Information, must instruct the employee to direct all such requests to the Company's Medical Accommodations Administration Team, and include a phone number for the Medical Accommodations Administration Team. The letter must explain to the employee that the failure to respond to the letter may result in termination upon the expiration of the leave period. The letter must advise employees that they are not required to be free of all restrictions in order to return to work.

C. A revised leave-end letter to be sent to any employee on a disability leave of absence (including a workers' compensation leave) at least ten (10) business days prior to the termination of each such employee. The letter must inform the employee of the Accommodations Information. The letter must instruct the employee to direct all

such requests to the Company's Medical Accommodations Administration Team and include a phone number for the Medical Accommodations Administration Team. The letter must explain to the employee that the failure to respond to the letter will result in termination upon the expiration of the leave period. The letter must advise employees that they are not required to be free of all restrictions in order to return to work.

35. After twenty-six (26) weeks of leave and after forty (40) weeks of leave for any employee, and at least four (4) weeks prior to terminating an employee for failing to return from a leave of absence, the Company will request from any third party leave or benefits administrator responsible for the leave or benefits of the employee (including any workers' compensation benefits or leave administrator and any disability leave or benefits administrator) a copy of the most recent doctor's release or Report of Attending Physician form and any other information in the possession of the third-party necessary to make an informed decision consistent with the ADA for review by the Medical Accommodations Administration Team. The Medical Accommodations Administration Team will consider the information contained in these documents in determining whether the employee can be returned to work with or without an accommodation. If the Medical Accommodations Team determines that the employee can be returned to work, the Medical Accommodations Team will make a written return to work offer to the employee including the accommodation available to the employee.

36. The inclusion of Paragraphs 27-36 in the Decree does not represent the Court's or EEOC's approval of the Company policies regarding leave and the accommodation process.

FACILITATING ADA COMPLIANCE AS A PERFORMANCE EVALUATION CRITERION

37. Commencing with the Fiscal Year 2012 (March 2011 to February 2012) performance review,

the Company will include "facilitating compliance with the ADA" within the diversity competency for each employee who is a member of the Medical Accommodations Administration Team.

38. Within forty-five (45) days of the Approval Date, the Company will inform any employee who will be evaluated for "facilitating compliance with the ADA" of this new performance evaluation criterion including each of the members of the Medical Accommodations Administration Team.

DISPUTE RESOLUTION

39. In the event that either party believes that the other party has failed to comply with any provisions of the Decree, the complaining party shall notify the alleged non-complying party in writing of such non-compliance and afford the alleged non-complying party fourteen (14) days to remedy the non-compliance or satisfy the complaining party that the alleged non-complying party has complied. If the alleged non-complying party has not remedied the alleged non-compliance or satisfied the complaining party that it has complied within fourteen (14) days, the complaining party may apply to the Court for appropriate relief.

DURATION OF CONSENT DECREE AND RETENTION OF JURISDICTION

40. All provisions of this Decree shall be in effect (and the Court will retain jurisdiction of this matter to enforce this Decree) for a period of three (3) years immediately following Entry of the Decree, provided, however, that if, at the end of the three (3) year period, any disputes under Paragraph 39 above remain unresolved ("the Dispute(s)"), the term of the Decree shall be extended automatically (and the Court will retain jurisdiction of this matter to enforce the Decree) until such time as all such Disputes have been resolved.

41. EEOC shall release the Company from the obligations of this Decree after two (2) years

based on a pattern of compliance, a lack of unresolved disputes, or for other good cause shown.

## MISCELLANEOUS PROVISIONS

42. The terms of this Decree shall be binding upon the Company and any successor of the Company during the Term of this Decree. The Company and any successor(s) of the Company, shall provide a copy of this Decree to any organization or person who proposes to acquire or merge with the Company, or any successor of the Company, prior to the effectiveness of any such acquisition or merger. This paragraph shall not be deemed to limit any remedies available in the event of any finding by the Court regarding a violation of this Decree.

43. If any provision(s) of the Decree are found to be unlawful, only such provision(s) shall be severed, and the remainder of the Decree shall remain in full force and effect.

44. When this Decree requires a certification by the Company of any fact(s), such certification shall be made under oath or penalty of perjury by an officer or management employee of the Company to the best of such officer's or management employee's knowledge, information, and belief.

45. When this Decree requires notifications, reports, and communications to the Parties, they shall be made in writing and hand-delivered, mailed, e-mailed, or faxed to the following persons:

    For EEOC:

    SUPERVALU INC. Settlement, c/o Regional Attorney, EEOC, 500 West Madison Street, Suite 2000, Chicago, IL 60661.

    For the Company:

Anne Marie Estevez, Morgan, Lewis & Bockius, LLP. 5300 Wachovia Financial

Center, 200 South Biscayne Boulevard, Miami, FL 33131-2339

Any party may change such addresses by written notice to the other party, setting forth a

new address for this purpose.

Agreed to in form and content:

**FOR PLAINTIFF**
**EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION**

P. David Lopez
General Counsel


Gwendolyn Young Reams
Associate General Counsel



JOHN C. HENDRICKSON
Regional Attorney



GREGORY GOCHANOUR
Supervisory Trial Attorney



DEBORAH HAMILTON
Trial Attorney

Equal Employment Opportunity Commission
500 W. Madison St., Suite 2000
Chicago, IL 60661


Date: _Jan 3, 2011_

ENTER: DATE: _January 14, 2011_

The Honorable Ronald A. Guzman
United States District Judge
DB1/66220557.3

**FOR DEFENDANTS SUPERVALU INC.**
**JEWEL FOOD STORES, INC. AND**
**AMERICAN DRUG STORES LLC**


TODD N. SHELDON
Senior Vice President and General Counsel


Date: _January 3, 2011_

## NOTICE TO EMPLOYEES

This Notice is being posted pursuant to a Consent Decree entered by the federal court in *EEOC v. Supervalu, Inc. et al.*, Case No 09 CV 5637 (N.D. Ill.), resolving a lawsuit filed by the Equal Employment Opportunity Commission ("EEOC") against SUPERVALU INC., Jewel Food Stores, Inc. and American Drug Stores LLC ("Defendants").

In its suit, the EEOC alleged that the Defendants violated the Americans with Disabilities Act ("ADA") by prohibiting disabled employees who were on Defendants' one-year paid disability leave, or eligible for it, from returning to work unless they could return without any accommodation to full service and had no physical or mental restrictions, and terminating such employees at the end of the one-year leave period. In response, Defendants deny that they violated the ADA, discriminated against any employees or failed to provide reasonable accommodations.

To resolve the case, the Defendants and the EEOC have entered into a Consent Decree that provides, among other things, that:

1) Defendants will make monetary payments to a class of Eligible Claimants.

2) Defendants will not require employees seeking to return to work from disability leave that they be fully or 100% recovered, but will provide reasonable accommodations to employees desiring to return to work in their former position or into another open, available position for which they are qualified. Defendants will hire a consultant to provide recommendations regarding reasonable accommodations for disabled employees.

3) Defendants will not retaliate against employees who have made allegations of disability discrimination or participated in any way in a proceeding involving disability discrimination; and

4) Defendants will provide training to designated personnel of Defendants.

If you are an employee with a disability and need an accommodation to work at Jewel or Jewel-Osco, you may contact the Medical Accommodations Administration Team at (630) 948-6460.

The EEOC enforces the federal laws against discrimination in employment on the basis of race, color, religion, national origin, sex, age or disability. If you believe you have been discriminated against, you may contact the EEOC at (312) 869-8000. The EEOC charges no fees and has employees who speak languages other than English.

## THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE

This Notice must remain posted during the duration of the Consent Decree and must not be altered, defaced or covered by any other material. Any questions about this Notice or compliance with its terms may be directed to: The SUPERVALU INC. ADA Leave Settlement, EEOC, 500 West Madison Street, Suite 2000, Chicago, Illinois 60661.

1/14/2010
Date

The Honorable Judge Guzman

## EXHIBIT A

## ELIGIBLE CLAIMANTS

| | | | | | |
|---|---|---|---|---|---|
| 1. | Albers | 38. | Hess | 74. | Rangel |
| 2. | Allen | 39. | Holder- | 75. | Riffle |
| 3. | Allen | | Weatherspoon | 76. | Rivera |
| 4. | Auker | 40. | Hunt | 77. | Ryan-McCloy |
| 5. | Balder | 41. | Ithal | 78. | Sanders |
| 6. | Bednarek | 42. | Jaffe | 79. | Schinagl |
| 7. | Blovas | 43. | Key | 80. | Schultz |
| 8. | Bost | 44. | Klos | 81. | Serras |
| 9. | Boyd | 45. | Kocan | 82. | Sessoms |
| 10. | Brandt | 46. | Kolberg | 83. | Shanahan |
| 11. | Bucchi | 47. | Kordun | 84. | Sipek |
| 12. | Burns | 48. | Kornan-Bandurski | 85. | Smith |
| 13. | Canezaro | 49. | Kwit | 86. | Sneddon |
| 14. | Ceh | 50. | Lautwein | 87. | Spencer |
| 15. | Cheatman | 51. | Leffelman | 88. | Spurlock |
| 16. | Childress | 52. | Lemon | 89. | Stauffer |
| 17. | Coley | 53. | Lugo | 90. | Stein |
| 18. | Collins | 54. | Lundy | 91. | Steinhable |
| 19. | Cox | 55. | Mathieu | 92. | Stephens |
| 20. | D'Acquisto | 56. | McCool | 93. | Stombaugh |
| 21. | Dean | 57. | Mendoza | 94. | Stricker |
| 22. | Del Frate | 58. | Miller | 95. | Tate |
| 23. | Dickson | 59. | Motisi | 96. | Templin |
| 24. | Doherty | 60. | Mugnolo | 97. | Tovar |
| 25. | Dorsey | 61. | Murphy | 98. | Trute |
| 26. | Dyer | 62. | Myles | 99. | Tucker |
| 27. | Ector | 63. | Niziolek | 100. | Turek |
| 28. | Eidson, III | 64. | Nocerino | 101. | Tyler |
| 29. | Engel | 65. | O'Connor | 102. | Vanderberg |
| 30. | Fey | 66. | Olsen | 103. | Varsalona |
| 31. | Fletcher | 67. | Orlando | 104. | Vasquez |
| 32. | Folkers | 68. | Papaleo | 105. | Wessling |
| 33. | Gallon | 69. | Pavett | 106. | Westenberger |
| 34. | Gordon | 70. | Pipkin | 107. | White |
| 35. | Graham | 71. | Pitcher | 108. | Wilke |
| 36. | Harrison | 72. | Prush | 109. | Wilson |
| 37. | Hawkins | 73. | Quraishi | 110. | Woods |

## EXHIBIT B

## <u>RELEASE AGREEMENT</u>

I, _____, in consideration for $ _____ paid to me by SUPERVALU INC. and/or Jewel Foods, Inc. and/or American Drug Stores LLC, in connection with the resolution of *EEOC v., Supervalu, Inc. et al.*, Case No 09 CV 5637 (N.D. Ill.), waive my right to recover for any claims of disability discrimination arising under the Americans with Disabilities Act, that I had against SUPERVALU INC., Jewel Food Stores, Inc., American Drug Stores LLC and their owners, affiliates, subsidiaries, divisions, predecessors, successors, licensees, assigns, employees, officers, directors, agents, insurers and attorneys prior to the date of this release and that were included in the claims alleged in EEOC's complaint in *EEOC v. Supervalu, Inc. et al.*, Case No 09 CV 5637 (N.D. Ill.).


Date: _____          Signature: _____

# EXHIBIT D

## CONSULTANT LIST

1.   **Paul J. Schwartz, CPE**
     University of Wisconsin-Stout
     221 10th Avenue 121 Vocational Rehab Building
     Menomonie, WI 54751
     Phone: (715) 232-2378
     Fax: (715) 232-5008
     Email: schwartzpa@uwstout.edu

2.   **Sheryl S. Ulin, CPE**
     University of Michigan-Center for Ergo
     1205 Beal-IOE Building
     Ann Arbor, MI 48109-2117
     Phone: (734) 763-0133
     Fax: (734) 764-3451
     Email: sheryl.ulin@umich.edu

3.   **James Dewees, MS, CPE, CEES**
     ERGO Accommodations LLC
     P O Box 15099
     Fernandina Beach, FL 32035
     Phone: (859) 466-8978
     Email: ergoacc@aol.com

4.   **Scott Haynes, MBME**
     Research Engineer II
     Center for Assistive Technology and Environmental Access (CATEA)
     Georgia Institute of Technology, College of Architecture
     490 Tenth Street, NW
     Atlanta, Georgia 30332-0156
     Phone: 404-894-9156
     Email: scott.haynes@coa.gatech.edu

5.   **Jeff Symons, MSE, ATP**
     Jeff Symons Consulting
     4641 Adelaide Pl
     El Dorado Hills, CA 95762
     Phone/Fax: 916-933-2375
     Email: jeff@jeffsymonsconsulting.com

DB1/66169830.2