**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EQUAL EMPLOYMENT ) <br> OPPORTUNITY COMMISSION, ) <br> ) <br> **Plaintiff,** ) <br> ) No. 09 C 5637 <br> ) <br> v. ) Judge Ronald A. Guzmán <br> ) <br> **SUPERVALU, INC., AMERICAN** ) <br> **DRUG STORES, LLC, and** ) <br> **JEWEL FOOD STORES, INC.,** ) <br> ) <br> **Defendants.** ) | |

**MEMORANDUM OPINION AND ORDER**

After the Equal Employment Opportunity Commission ("EEOC") sued Supervalu, Inc., Jewel Food Stores, Inc. and American Drug Stores, LLC for alleged violations of the Americans with Disabilities Act ("ADA"), the parties entered into a consent decree ("Decree") resolving the litigation. The EEOC filed the instant motion for contempt contending that the defendants violated certain terms of the Decree. This Court referred the motion to the magistrate judge who issued his report and recommendation ("R&R") on August 8, 2012. The parties each filed objections to the R&R. For the reasons stated below, the objections are overruled in part and sustained in part.

**I.     Analysis**

In order to succeed on a petition for contempt, the plaintiff must show by clear and convincing evidence that: (1) the court order sets forth an unambiguous command; (2) the defendants violated that command; (3) the defendants' violation was significant, meaning it did not substantially comply with the order; and (4) the defendants failed to take steps to reasonably

and diligently comply with the order. *F.T.C. v. Trudeau*, 579 F.3d 754, 763 (7th Cir. 2009) (citations omitted).

    A.    <u>Defendants' Objection</u>

Paragraph 35 of the Decree states in relevant part that:

> After twenty-six (26) weeks of leave and after forty (40) weeks of leave for any employee, and at least four (4) weeks prior to terminating an employee for failing to return from a leave of absence, the Company will request from any third party leave or benefits administrator responsible for the leave or benefits of the employee . . . a copy of the most recent doctor's release or Report of Attending Physician form and any other information in the possession of the third-party necessary to make an informed decision consistent with the ADA for review by the Medical Accommodations Administration Team [MAAT]. The Medical Accommodations Administration Team will consider the information contained in these documents in determining whether the employee can be returned to work with or without an accommodation. *If the Medical Accommodations Team determines that the employee can be returned to work, the Medical Accommodations Team will make a written return to work offer to the employee including the accommodation available to the employee.*

(Dkt. 148, ¶ 35.) (emphasis added).

The plaintiff's motion for contempt asserts that the defendants failed to send the required written return-to-work offer letters to certain employees.[1] In their response to the motion for contempt, the defendants acknowledge that they did not send return-to-work offer letters to all associates returning from leave. According to the defendants, however, they had telephone conversations with certain associates to determine if the associate was able and willing to return to work and made verbal return-to-work offers where it was determined that the employee could return to work. (Defs.' Obj., Dkt. # 177, at 4.) Because they had these conversations, the defendants argues that follow-up letters are unnecessary. (R&R, Dkt. # 174, at 17.)

The magistrate judge concluded that:

---

[1] The Court refers to associates and employees interchangeably.

2

> [a] proper reading of ¶35 – one that is consistent with the ADA – requires defendants to send a written return to work offer to any employee the MAAT has determined can be returned to work, where the MAAT made that determination after it requested information from the TPA(s) [third-party administrators], considered any information received, *and* engaged in the interactive process dialogue with the employee at issue.

(*Id*. at 18) (emphasis in original.) The magistrate judge further concluded that the "defendants' 'interactive process by dialogue' standing alone does not establish substantial compliance" and therefore the defendants violated the Decree in that regard. (*Id*. at 18-19.)[2] The magistrate judge then recommended that for each employee terminated by the defendants for failing to return from a disability leave between February 14, 2011 and April 30, 2012 ("former employee") the defendants be ordered to:

> (a) obtain and review the information set forth in ¶35 that existed at the time that former employee's disability leave entitlement expired;
> (b) make at least two good faith efforts, with at least one by telephone and one by certified mail sent to the former employee's last known address, to contact each former employee and discuss whether he or she could have been returned to work, with or without an accommodation, at the time his or her leave entitlement expired, and whether he or she is willing to be so returned to work;
> (c) consider the above information in determining whether the former employee could have been returned to work, with or without an accommodation, at the time his or her leave entitlement expired; and
> (d) if the MAAT determines that the former employee could have been returned to work, make a written return to work offer to that former employee, including any accommodation(s) available to him or her.

(*Id*. at 19.)

It is undisputed that the defendants did not send the required return-to-work letter to all employees they determined were eligible to return to work. The plaintiff indicates that the genesis of this requirement was its concern, based on information that it received in this

---

[2] Apparently, the defendants' reliance on telephone conversations and their failure to send written return-to-work letters occurred only between the approval of the Decree in January 2011 and April 30, 2012, when the defendants state they put in place a procedure by which all relevant associates were sent a return to work letter. (R&R, Dkt. # 174, at 18-19.)

3

litigation, that the defendants were providing misinformation in their phone calls to employees on leave. (Pl.'s Resp. Defs.' Obj., Dkt. # 179, at 4). Accordingly, the Court agrees with the R&R that the defendants' failure to send written return-to-work letters to all of those it identified were capable of returning to work constitutes a violation of the Decree that is more than harmless error. The Court concludes that the defendants did not substantially comply with this term of the Decree. Moreover, because the defendants acknowledge that they did not send the letter to all those employees whom they determined could return to work and provide no basis for the failure, the plaintiff has shown that the defendants failed to take steps to reasonably comply with the term to send a written return-to-work offer letter. The question remains what the remedy for the violation should be.

According to the defendants, there were approximately 150 to 200 associates terminated for failure to return from leave during the relevant time period. They argue that if they determined at the relevant time, as set out in ¶ 35, that the associate was unable to return to work with or without an accommodation, the associate was terminated for exhausting his or her leave entitlement. The defendants assert that they should not be required to repeat the interactive process for this group of associates because they already determined that the associates could not be accommodated. This Court agrees. The Decree only requires that a written return-to-work letter be sent if the defendants determined that the employee was able to return to work.

The same is also true with respect to this associates whom the defendants were unable to contact through either telephone or letter to engage in the interactive process in the first place.[3]

---

[3] The defendants state that while associates are responsible for ensuring that the defendants have current contact information, the associates do not always provide these updates and thus they are unable to engage in the interactive process and determine whether the employee is able to return to work.

4

Because the defendants were not required to send a return-to-work letter to these employees, the Court finds that letters need not be sent to the categories of employees discussed in this paragraph.

In addition, the defendants argue that with respect to the employees whom they determined could return to work, a verbal offer was made, and where applicable, the employee was informed of the reasonable accommodations. If the associate represented that she was able to return to work, she was placed back on the schedule. The defendants assert that letters to these employees would have been "superfluous" and there is no evidence that an associate who verbally represented that she was able to return and accepted a return-to-work offer (with or without an accommodation) failed to return because she did not receive a written return-to-work letter. Regardless, the Decree required the defendants to send a written return-to-work letter in these circumstances, and the Court concludes that such a letter must be sent.

Similarly, the defendants note that they determined that some employees were able to return to work, with or without an accommodation, and after notifying these employees verbally, they refused to return. According to the defendants, they sent letters to some of the employees to memorialize their refusal to return and there is no evidence that any employee who received such a letter contacted the defendants to indicate a change of heart and ask to be returned to work. However, sending a letter memorializing the employee's refusal to return to work does not comply with ¶ 35, which required a written offer to return to work for those employees deemed able to return. With respect to those employees who refused to return despite being given a verbal offer to do so and did not receive a memorialization letter, letters must also be sent, despite the defendants' assertion that an associate who did not receive a letter memorializing

5

their refusal would not have returned if they had received a letter.

The defendants' contention that letters to these latter two categories of employees is unnecessary, either at the time the employee was notified that they could return to work or now, in unavailing. The Decree requires that a written return-to-work offer letter be sent to those employees whom the defendants determined at the relevant time were able to return to work. The plaintiff has concerns regarding the information that was being provided to employees during telephone calls, so the parties agreed as part of the Decree that written return to work letters would be sent, and the defendants have not provided the Court with any basis on which to rewrite those terms.

Thus, for the time period from January 14, 2011, the date on which the Court signed the Decree, to April 30, 2012, the date on which the defendants state they began sending the written return-to-work letters for eligible employees as required by ¶ 35, the defendants shall send written return-to-work letters to those employees whom they determined, at the relevant time, could return to work. To the extent that the employee accepted the return-to-work offer, the letter shall explain that the defendants should have sent a written return-to-work offer letter at the time the verbal offer was made and setting forth the terms and conditions of the return to work offer, including reasonable accommodations. The same shall be done for those employees to whom a verbal return to work offer was made but refused. As to those employees who previously refused the verbal return to work offer but accept based on the written return-to-work offer letter sent pursuant to this order, the defendants shall conduct a review of the employee's current medical evidence and at least one telephone discussion with the employee. If the defendants determine that the employee is able to return to work with or without an

accommodation, the defendants shall employ that person in an open position pursuant to the terms and conditions offered, including accommodations.

For the reasons stated above, the defendants' objections to the R&R are sustained in part and overruled in part.

    B.    <u>EEOC's Objections</u>

        1.    *Timing of Leave-end Letters*

Paragraph 34(c) of the Decree requires that revised leave-end letters "be sent to any employee on a disability leave of absence . . . at least ten (10) business days prior to the termination of each such employee." (Dkt. # 148, ¶ 34(c).) The plaintiff asserts that the defendants violated this provision during the first and second reporting periods when they sent leave-end letters after an employee's effective termination date. A "typical letter. . . states that the associate exhausted her leave entitlement several weeks ago, explains how to request an accommodation, and concludes that the associate has been terminated for failing to return to work before exhausting 52 weeks on leave." (Pl.'s Mem. Supp. Mot. Contempt, Dkt. # 162, at 8.) According to the plaintiff, "[a] reasonable person would interpret [defendants'] untimely final letter as a retroactive termination notice rather than an invitation to contact [them] within the next ten days to request an accommodation." (*Id.* at 9.) The plaintiff asks that a corrective letter be sent stating that the earlier letter was sent in error and "promising to make whole" any associate who establishes that he or she could have returned to work when the erroneous letter was sent. (*Id.* at 10.)

The defendants asserted in response to the motion for contempt that an administrative error caused the letters to be sent after the employees' leave entitlement expired and that when

7

the plaintiff brought the problem to the defendants' attention, the defendants remedied the issue by January 2012. (Defs.' Opp. Mot. Contempt, Dkt. # 170, at 15 n.12.) According to the defendants, they did not make a determination to terminate until after attempting to reach the employee by phone, and if unable to do so, they sent an additional letter advising the associate of the defendants' attempt to contact them. The defendants contend that the phone call and follow-up letter accomplished the same goal as the letter required under ¶ 34(c). Defendants also state that they "delayed processing the associate's termination for at least two weeks to give the associate sufficient opportunity to contact [the defendants] in response to the written and verbal communications." (*Id*. at 16.) Finally, the defendants assert, and the plaintiff does not challenge, that there is no evidence that the defendants ever denied an associate an accommodation to return to work merely because his or her leave entitlement had been exhausted. (*Id*. at 14.)

The magistrate judge acknowledged that the letter could be confusing to associates whose leave had already been exhausted, but concluded that "a possibility of confusion is not enough to establish a violation of the Decree." (R&R, Dkt. # 174, at 12.) The magistrate judge then went on to find that the Decree does not define "termination" as used in ¶ 34(c) and stated that "termination" as defined in Black's Law Dictionary means the "complete severance of an employer-employee relationship." (R&R, Dkt. # 174, at 13.) Thus, as noted by the defendants:

> [b]y delaying the termination of an associate until at least two weeks after sending the final interactive process letter, the [defendants] necessarily extended the associate's leave of absence for at least 10 days and, as the Magistrate Judge found, complied with the Consent Decree's requirement that it send final interactive process letters at least 10 days prior to terminating the employment of an associate for failure to return from leave.

(Defs.' Resp. Pl.'s Obj., Dkt. # 180, at 2.)

The plaintiff challenges the magistrate judge's definition of termination as the severance of the employer-employee relationship versus the exhaustion of the leave period, contending that it undermines the plain language of the Decree.

The Court agrees with the magistrate judge that a corrective letter need not be sent in light of the fact that phone call was made, a letter was ultimately sent and the plaintiff does not contend that there is evidence that the defendants denied any associate an accommodation to return to work merely because his or her leave entitlement had been exhausted. Because the plaintiff has not demonstrated by clear and convincing evidence that defendants failed to take steps to reasonably and diligently comply with the order, the plaintiff's objection as to this part of the R&R is overruled.

2. *Provision Enjoining Defendants from Violating ADA*

Paragraph 5 of the Decree states that the defendants are "hereby enjoined from discriminating on the basis of disability by not providing reasonable accommodation(s) to persons desiring to return to work from a disability leave." (Dkt. # 148, ¶ 5.) In its motion for contempt, the plaintiff contends that it has identified three employees who were terminated or "forced to resign" during the first reporting period, purportedly in violation of ¶ 5. The plaintiff seeks discovery, including written discovery, up to three depositions, and a subsequent status to, if necessary, schedule an evidentiary hearing and associated pre-hearing conferences and filings.

The magistrate judge denied this aspect of plaintiff's motion for contempt, concluding that to allow the plaintiff to pursue the requested relief in this action "would mean that the statute of limitations and administrative exhaustion requirements under the ADA would effectively be abolished for any employee of defendants seeking to challenge any accommodation decision

9

made by defendants for the duration of the Decree." (R&R, Dkt. # 174, at 25.) The magistrate judge found that the "injunctive language set forth in ¶5 does not establish an independent cause of action that may be used by an aggrieved employee against defendants *in lieu* of the rights and remedies (and attendant obligations) generally available under the ADA" (*id*. at 28) (emphasis in original), and recommended that the Court deny the plaintiff's request for discovery and evidentiary hearings. (*Id*.) The defendants contend that the magistrate judge's ruling is correct.

In a dispute regarding the scope of a provision in a consent decree, the "fundamental principles of contract interpretation under relevant state law apply" and "the enforcing court will look to the plain language of the written agreement as the best expression of the parties' intent." *United States v. City of Northlake*, 942 F.2d 1164, 1167 (7th Cir. 1991). Where the language of the consent decree is unambiguous, then the inquiry is over. *Id*. If the language is ambiguous, "then parol or other extrinsic evidence must be considered in order to reconstruct the intent of the parties at the time they entered into the agreement." *Id*.

As already noted, the Decree expressly states that the defendants are enjoined from discriminating on the basis of disability by failing to provide reasonable accommodations to those seeking to return to work from a disability leave. The language is unambiguous; therefore, the Court finds that the alleged violations complained of are within the scope of the Decree and the plaintiff properly seeks relief pursuant to the Decree. *Id*. at 1168 ("If the defendant violates the terms of the consent decree, the plaintiff's recourse is to bring an action to enforce the decree.").

Seventh Circuit precedent supports this conclusion. In *City of Northlake*, the court considered a consent decree that enjoined the city of Northlake from engaging in "any

employment practice which unlawfully discriminates on the basis of race or color in the recruitment or hiring of employees or in other terms and conditions of employment." *Id*. at 1165. The decree resulted from a suit brought by the United States, which alleged that "Northlake failed and refused to recruit or hire blacks on the same basis as whites, and failed and refused to adopt objective, non-discriminatory hiring procedures." *Id*. The "complaint specifically challenged Northlake's durational residency requirement, asserting that it was enacted with a racially discriminatory purpose." *Id*. After entry of the consent decree, the government filed a motion for supplemental relief, seeking discovery based on its belief that the city had intentionally discriminated on the basis of race by its "use of . . . subjective interview practices" in selecting police officers. *Id*. at 1166-67. The district court denied the motion finding that the government could only seek relief by filing a new case because it "started out as a residence case" and the government had attempted through the contempt proceeding to turn it into a "testing and selection case." *Id.* (internal citations omitted).

      The Seventh Circuit reversed, finding that "[t]here is no basis for concluding that the subjective hiring practices complained of here by the United States fall outside the comprehension of the consent decree." *Id*. at 1168. The *Northlake* court went on to state that:

> [t]o make the United States file a new lawsuit to remedy allegedly illegal conduct already embraced by a consent decree would serve as a disincentive to civil rights plaintiffs contemplating whether or not to enter into such a decree. It would also undermine the congressionally expressed preference for cooperation and voluntary compliance in the resolution of employment discrimination disputes.

*Id.* As the Seventh Circuit noted, "[m]uch of a consent decree's value lies not in the steps to be taken immediately by the defendant to remedy discrimination, but in the promise that the plaintiff in a case like this one can look to the courts to hold the defendant in contempt for

11

ongoing and future violations." *Id.* at 1168-69.

The Court finds the reasoning in *Northlake* dictates the result in this case. The Court respectfully disagrees with the magistrate judge that *Northlake* is distinguishable on the ground that in *Northlake*, the government sought to enforce a "process-related" aspect of an anti-discrimination consent decree which "did not implicate the statutorily-imposed limitations and administrative proceedings required by Title VII." (R&R, Dkt. # 174, at 28.) As an initial matter, the Seventh Circuit did not characterize the relief sought by the government in *Northlake* as "process-related." Even assuming that the distinction is relevant, the plaintiff's request for relief in this case could certainly be construed as "process-related" in that it is seeking to ensure that the defendants' procedures for addressing an employee's return to work after a disability leave comply with federal law. Moreover, had the individuals in *Northlake* who were affected by the allegedly discriminatory selection practices brought suit, they would have had to comply with any limitations and exhaustion requirements under Title VII. The Seventh Circuit, however, did not mention this fact and it did not preclude the *Northlake* court from finding that the government properly brought the motion for contempt of the consent decree in that case.

This is likely due, in part, to the fact that the "EEOC's primary role is that of a law enforcement agency." *In re Bemis Co.*, 279 F.3d 419, 421 (7th Cir. 2002). It seeks to enforce federal employment discrimination laws and, while individuals may benefit financially or otherwise from the EEOC's prosecution of cases, the "EEOC is not merely a proxy for the victims of discrimination." *Gen. Tel. v. EEOC*, 446 U.S. 318, 326 (1980); *In re Bemis*, 279 F.3d at 421 ("[I]t is merely a detail that [the EEOC] pays over any monetary relief obtained to the victims of the defendant's violation rather than pocketing the money itself and putting [the

individuals] to the bother of suing separately"). Thus, exhaustion of administrative remedies is not an issue when the EEOC is the plaintiff. *EEOC v. Caterpillar*, 409 F.3d 831, 832-33 (7th Cir. 2005). *See also EEOC v. Autozone, Inc.*, --- F.3d ----, 2013 WL 561587, at *14 (7th Cir. Feb. 15, 2013) ("The [injunction] order is enforceable via contempt motion, bypassing the normal administrative and adjudicative processes for ADA accommodation claims.").

For these reasons, the Court sustains the plaintiff's objection to this aspect of the R&R.

## II. Conclusion

The defendants' and the plaintiff's objections are sustained in part and overruled in part as provided herein. The Court adopts the Report and Recommendation [174-1] with the modifications stated in this order and grants in part and denies in part the Motion for Civil Contempt Sanctions and to Conduct Limited Discovery [160-1]. The Court remands the case to the magistrate judge to oversee the discovery sought by the plaintiff pursuant to ¶ 5 of the Decree as well as to conduct any evidentiary hearings and associated conferences, if necessary.

**Date**: March 19, 2013

**Ronald A. Guzman**
**United States District Judge**